UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

MIRIAM WILLIAMS-IVORY,

    Plaintiff,

vs.                               CASE NO:

MORRIS YOUNG, in his
Official Capacity as Sheriff of
the GADSDEN COUNTY
SHERIFF'S OFFICE

    Defendant.
_____/

## COMPLAINT FOR DAMAGES

COMES NOW, the Plaintiff, **MIRIAM WILLIAMS-IVORY** (hereinafter to be referred to as "Plaintiff" or "Ms. Williams-Ivory"), who sues the Defendant, Morris Young, in his official capacity as Sheriff of Gadsden County Sheriff's Office, and in support thereof, states as follows:

### JURISDICTIONAL ALLEGATIONS:

1. This is an action for damages in excess of Seventy-Five Thousand ($75,000.00) Dollars.

2. The Plaintiff, Miriam Williams-Ivory is an African American female who, at all times material to this instant Complaint, has been a resident of Havana, Florida, and is an adult female over Eighteen (18) years of age. The Plaintiff is *sui juris*.

3. The Defendant, Morris Young, in his capacity as Sheriff of the Gadsden County Sheriff's Office, at all times pertinent to this instant Complaint, has been at...

OFFICE OF CLERK
NORTHERN DIST. FLA.
TALLAHASSEE, FLA.

2006 OCT 13  PM 4:34

1

FILED

agency as a county office charged with the task of providing law enforcement and public safety services to the citizens of Gadsden County, Florida.

4. Plaintiff, Ms. Williams-Ivory, has performed all conditions precedent to the bringing of this action and/or exhausted all administrative remedies available to her including, but not limited to, the filing of a complaint with the Defendant as well as with the Florida Commission on Human Relations and United States Equal Employment Opportunity Commission. Plaintiff has obtained a Notice of Right to Sue from the United States Department of Justice dated July 12, 2006, a true copy of which is attached hereto as **Exhibit "1"**.

5. This is an action resulting from discrimination and wrongful termination predicated upon Title VII of the Civil Rights Act of 1964 (codified as 42 U.S.C.S., Section 2000, *et. al.*), and, as such, the jurisdiction of this Court is properly invoked as this instant case involves a question of federal law.

### GENERAL ALLEGATIONS:

6. Plaintiff was employed by the Defendant, Gadsden County Sheriff's Office, as a Deputy Sheriff and School Officer beginning during the Summer of 2002 and ending on or about August 31, 2004.

7. While employed by the Gadsden County Sheriff's Office (hereinafter GCSO) Plaintiff was the unwilling victim of several inappropriate and unwarranted sexual advances by her supervisor Captain Robert Barkley, Former Sheriff W.A. Woodham (deceased), and Captain Ted Sadler.

8. After speaking with another law enforcement officer she trusted, Plaintiff complained to the Florida Department of Law Enforcement (FDLE) about this problem

and turned over to them tapes, photographs, and other materials that were made by her and a private investigator hired by the Southern Christian Leadership Conference in an effort to document problems in the GSCO.

9. Plaintiff retained legal counsel who also met with FDLE. Eventually a report was prepared by FDLE, a true copy of which is attached hereto as **Exhibit "2"** and is incorporated herein by reference.

10. Although the report does not conclude that there was any criminal wrongdoing at the GCSO, it does contain information supporting Plaintiff's complaints of sexual harassment and gender discrimination. The report, while serving to summarize most of Plaintiff's allegations of sexual harassment, also references other incidents of improper and prurient conduct that are not included involving both Ted Sadler and other GCSO employees which support Plaintiff's claim of sexual harassment and employment discrimination in that they demonstrate the hostile work environment in which she was forced to work. These other incidents of improper and prurient conduct include the following additional situations:

A.) Comments by Captain Ted Sadler that the only way Plaintiff could get the long sleeve uniform shirt she requested was to have sex with him in the back of his truck.

B.) False statements by GSCO mechanic Eddie Lee Hollis to other GCSO employees that he went to Plaintiff's house and saw her in the doorway naked.

C.) Comments by former Sheriff Woodham to Plaintiff about her nipples and his unauthorized touching of her breasts in the GSCO hallway.

D.) Although it is mentioned in the report in connection with the statements by former Sheriff Woodham about his being able to sleep with Plaintiff 633 days after he offered Plaintiff the ticket to the banquet and was no longer Sheriff[1].

E.) Captain Barkley prevented Plaintiff from leaving his office after he called her in for a meeting by locking the door and standing in front of it. On other occasions Barkley made Plaintiff spend much of her time in his office and would not let her perform her normal duties as a Deputy Sheriff and School Patrol Officer. Captain Barkley was very possessive of Plaintiff and got angry when she worked with other male officers. Barkley repeatedly told Plaintiff that he "owned" her and that he could "ruin" her, if he wanted to. On at least one (1) occasion, when Plaintiff was in his office, Barkley touched Plaintiff's butt without her permission. He also mouthed the words he was going to "fuck" Plaintiff and wrote on a piece of paper "tonight for sure". He tore off the top piece of this paper when he tried to take the paper out of Plaintiff's hand after she realized what he had written. Plaintiff took both pieces from his desk and ran out of his office as soon as she could get away from him. Plaintiff gave both pieces of paper to FDLE. Captain Barkley followed Plaintiff out of his office all the way to her vehicle. Captain Barkley also told Plaintiff that no one would believe her if she complained about him because of his attorneys who, he claimed, could "get him out of anything".

F.) After Sheriff Woodham did not seek re-election and Morris Young was elected Sheriff by defeating Major Ed Spooner in a very close election, Plaintiff requested, and was granted, an appointment with Sheriff Young. Plaintiff had known and worked with Morris Young by virtue of the fact that he had also been a School Resource

---

[1] Sheriff Woodham intended to retire at the end of his term and under Florida law he did, in fact, cease being Sheriff on or about 633 days after he gave Plaintiff the banquet ticket.

Officer[2]. Plaintiff was very excited about his election and spoke with him about going back to work after he became Sheriff. Young once told Plaintiff he would create a position for her after taking care of some of the immediate problems as the newly elected Sheriff. During early March 2005, Plaintiff scheduled a meeting with Sheriff Young to talk about working for the GSCO. Plaintiff initially went to see the new Sheriff on Monday March 7, 2005, but he had to go to a funeral and could not see her until the next day. While Plaintiff was waiting to see the Sheriff the following day, Major David Gainous asked her to come into his office and he closed the door. Major Gainous told Plaintiff he had heard that she had recently married, but stated that he was probably seeing her more often than her husband. He then opened his desk drawer and pulled out a photograph of Plaintiff he had taken from the identification badge she turned in when she left the GSCO[3]. This continued inappropriate and harassive conduct from a GSCO senior manager upset Plaintiff and caused her to wonder if she wanted to return as a deputy sheriff. When Plaintiff met with Sheriff Young, he told her that he was not sure that he would hire her because Captain Barkley was telling him some things about her. The Sheriff told Plaintiff that Barkley was saying that she filed the complaints about the GSCO because she had been paid $700.00 by Ed Spooner who ran against Barkley and Sheriff Young to hurt Barkley. This statement that Barkley made to the Sheriff is not baseless.

---

[2] Plaintiff did have a consensual relationship with Morris Young while he was a Deputy Sheriff who was also a School Resource Officer prior to his being elected Gadsden County Sherriff during late 2004. This relationship should not be confused with the sexual encounters Plaintiff had with Captain Barkley which were not consensual.

[3] Captain Gainous also kissed Plaintiff in the elevator without her permission during the Spring of 2004 and told her he wanted to see her breasts which he described as "oranges".

5

G.) Captain Barkley forced Plaintiff to have sex with him during a trip to Orlando during June, 2002.

H.) Sheriff Woodham grabbed Plaintiff's breast and pulled her into the men's bathroom on the second floor of the Sheriff's Office.

11. During the Spring and early Summer of 2004, Plaintiff became very ill due to the stress and fear associated with the actions against her by the GCSO described above. Ms. Williams-Ivory was placed on medication by her treating physician for anxiety and depression. Plaintiff was also forced to take extensive medical leave beginning on or about May 13, 2005, due to the fact her health problems prevented her from working. After the undersigned counsel intervened during July 2004, the GCSO allowed Plaintiff to receive health insurance until the FDLE investigation was expected to be completed. In spite of requests by undersigned counsel, as well as an ultimate finding by FDLE that Plaintiff did not engage in any illegal activity by working with the private investigator in gathering evidence of alleged wrongdoing in the GCSO, Ms. Williams-Ivory was terminated from her position with the GCSO effective August 31, 2004.

12. Plaintiff was fired in retaliation for her complaints about the former Sheriff and Captain Barkley to FDLE about gender-based discrimination at the GCSO.

13. Plaintiff, through the undersigned counsel, has repeatedly requested meetings with Sheriff, Morris Young, and his counsel to discuss Plaintiff's situation, including the incident with Major Gainous, the false statements about her by Captain Barkley, and her offer to take a polygraph or similar test regarding these and any other false allegations the new Sheriff has heard about her, but these requests have been repeatedly denied.

14. Eventually, after extensive counseling and other medical treatment, Plaintiff's health improved and she attempted a return to work as a law enforcement officer. Plaintiff sought employment with several law enforcement agencies and, in at least two (2) instances,[4] was not successful in obtaining re-employment due to retaliatory and unflattering statements about her by representatives of the GCSO. Unless Plaintiff can find employment as a law enforcement in the near future, she will lose her state certification as a law enforcement officer.

### COUNT ONE (1)
### GENDER DISCRIMINATION
### VIOLATION OF TITLE VII
### (codified as 42 U.S.C.S., Section 2000)

15. Plaintiff reasserts and incorporates by reference Paragraphs One (1) through Fourteen (14), as if set forth in their entirety herein.

16. The Plaintiff, Miriam Williams-Ivory, is a female and, as such, is a member of a protected class within the contemplation of Title VII. The Plaintiff, Ms. Williams-Ivory, ultimately suffered what was, indisputably, an adverse employment action in that she was terminated from her position with the Defendant.

17. As previously referenced herein, *supra*, there were multiple occasions in in which Ms. Willliams suffered disparate treatment at the hands of the Defendant when compared to the treatment provided to her male law enforcement counterparts.

18. Plaintiff's membership in a protected class was a direct and proximate cause of the adverse employment decision she suffered as evidenced by the fact that male workers were not subjected to the same alleged infractions giving rise to Ms. Williams-Ivory's termination.

---

[4] The police departments for the City of Havana, Florida and the City of Quincy, Florida.

19. Despite multiple instances of gender-based discrimination and disparate treatment under their supervision, the GCSO did absolutely nothing to correct said discriminatory behavior and, in failing to act, only served to empower and/or embolden discriminatory activities as carried out by GCSO agents and/or officers.

20. As a direct and proximate cause of the gender discrimination the Plaintiff suffered at the hands of the Defendant, a hostile work environment was created in which it became impossible for her to complete her work and/or retain and/or assert any rights she might have had as a term and/or condition of her employment.

21. As a direct and proximate result of the aforementioned situation, Ms. Williams-Ivory has suffered a mental breakdown, loss of employment, loss of capacity for the enjoyment of life, embarrassment, humiliation, societal marginalization, attenuation of personal and professional reputation, and depression. These losses and/or injuries are continuing and will not abate in the future.

**WHEREFORE**, the Plaintiff, **MIRIAM WILLIAMS IVORY**, demands judgment against the Defendant, Morris Young, in his capacity as Sheriff of Gadsden County Sheriff's Office, Agency, for compensatory damages, attorney's fees, costs, and any such other relief as this Court may deem equitable and just.

**THE PLAINTIFF DEMANDS A JURY TRIAL.**

**STATE OF FLORIDA**
**COUNTY OF LEON**

UNDER PENALTY OF PERJURY, I do hereby certify that all of the fore-

going facts as set forth in this instant Complaint are true and correct.

_____
MIRIAM WILLIAMS IVORY

_____
Notary Public

My Commission Expires:

Wendy A. Bessy
MY COMMISSION # DD250506 EXPIRES
September 16, 2007
BONDED THRU TROY FAIN INSURANCE, INC.

SWORN AND SUBSCRIBED TO on this 13TH day of October, 2006, by Miriam Williams-Ivory, who is personally known to me; or provided _____ as identification.

DATED this 13 day of October, 2006.

THE LAW OFFICES OF
H. RICHARD BISBEE, P.A.

_____
H. RICHARD BISBEE, Esq.
Attorney at Law
Florida Bar No. 327808
1882 Capital Circle N.E., Suite 206
Tallahassee, Florida 32308
Phone: (850) 386-5300
Telefax: (850) 219-0053

9

BILL REEVES, ESQ.

By: _____
Bill Reeves, "Of Counsel"
Fla. Bar No 254533
1882 Capital Circle N.E., Suite 206
Tallahassee, Florida 32308


PATRICK R. FRANK, ESQ.

By: _____
Patrick R. Frank, "Of Counsel"
Fla. Bar No: 0642770
1882 Capital Circle N.E. Suite 206
Tallahassee, Florida 32308


Attorneys for Plaintiff, **MIRIAM WILLIAMS-IVORY**