**U.S. Department of Justice**

Civil Rights Division

NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
5056 8405

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

July 12, 2006

Ms. Miriam I. Williams
c/o William Reeves, Esquire
Law Offices of H. Richard Bisbee
1882 Capital Circle N.E.
Suite 206
Tallahassee, FL  32308

Re:  EEOC Charge Against Gadsden County Sheriff's Office
     No. 15D200500703

Dear Ms. Williams:

Because you filed the above charge with the Equal Employment
Opportunity Commission, and more than 180 days have elapsed since
the date the Commission assumed jurisdiction over the charge, and no
suit based thereon has been filed by this Department, and because
you through your attorney have specifically requested this Notice,
you are hereby notified that you have the right to institute a civil
action under Title VII of the Civil Rights Act of 1964, as amended,
42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be
filed in the appropriate Court within 90 days of your receipt of
this Notice.

This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is
meritorious.

Sincerely,

Wan J. Kim
Assistant Attorney General
Civil Rights Division

by

Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc:  Miami District Office, EEOC
     Gadsden County Sheriff's Office



DEFENDANT'S
EXHIBIT
1

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## INVESTIGATIVE REPORT

On Thursday, June 3, 2004, Special Agent (SA) Mike Smith and SA Gina Bevino of the Florida Department of Law Enforcement (FDLE) met with Deputy (Dep.) Miriam Ivory of the Gadsden County Sheriff's Office (GCSO) regarding her complaint of sexual harassment by Captain (Capt.) Robert Barkley also of the GCSO. The purpose of the meeting was to determine if Dep. Ivory's complaint was criminal in nature.

On June 3, 2004, Deputy Ivory contacted Special Agent Supervisor (SAS) Mike Phillips, FDLE. She stated that she was being harassed by Captain Robert Barkley and had been working with a private investigator trying to get 'proof'. SAS Phillips told her to come to the FDLE and speak with SA Gina Bevino.

On June 3, 2003 at approximately 1:45 pm Dep. Ivory arrived at FDLE. SA Mike Smith and SA Gina Bevino met with her.

Dep. Ivory was very distraught and difficult to understand at times. The following is a synopsis of the discussion:

She stated that she has worked for the GCSO for approximately two years, prior to that she worked for thirteen years at the Department of Education (DOE) and the Department of Highway Safety and Motor Vehicles (DHSMV) combined.

She was hired as a School Resource Officer (SRO) and has been at two (2) different schools. Both principals had problems with her and have complained to the Sheriff. The first school she worked in was Robert F. Monroe. The Principal complained that she was not in the school enough. According to Ivory, she was always diverted to other assignments for the Sheriff's Office. The second year she worked at Steward Elementary. The principal was Rosa Barkley, Capt. Robert Barkley's sister in law. The SRO's Office was located in the same space with a lot of chemicals, so Ivory complained to Capt. Barkley and Major Sadler. They met with the Sheriff who ordered the problem be corrected, but according to Ivory, was not.

She also stated that she was never issued Class-A uniform and has never been trained to do her job. When she is not working as a SRO, she works in investigations on child sex abuse cases and lately works the road. She stated that she has never been trained to work the road and does not know how to do her job. She has asked on several occasions for training and gets turned down. She asked Capt. Barkley if she could ride with some of the road deputies to learn, but according to Ivory, Capt. Barkley told her no because all of them would just want to

| Case Number:TL-73-1622 | Serial #:1 |
|---|---|
| Author:Bevino, Gina | Office:Tallahassee |
| Activity Start Date:06/03/2004 | Activity End Date:06/03/2004 |

Approved By:Phillips, Mike

Description:Interview of Deputy Miriam Ivory, GCSO.

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*



DEFENDANT'S EXHIBIT
2

201020041215132810

screw her. She stated that when she is not at her school, Barkley tells her just to sit in his office and "look pretty". He often shuts the door to her office and locks it so nobody else can get in. He has told her that he likes her breasts and wants to touch them. On May 5, 2004, while in his office, he told her that he loves her and misses her. She stated that Wendy Sampson is the Victim's Rights Avocate for the GCSO and has heard Ivory and Barkley in his office on occasion. On one occasion Sampson asked Ivory if she was alright as she left his office.

Ivory has been on sick leave since April 12, 2004, for depression and stress.

Ivory told her physician, Dr. Lee about what is going on at work and he is concerned about her. She also told her Pastor, S.L. Phillips (NFI). Phillips recommended that she contact Diop Kamau of the Police Complaint Center at (850) 894-6819 or cell phone (850) 264-6648.

According to Ivory, Kamau has an associate, Greg Slade, W/M, (NFI) who came from Washington D. C., to assist Kamau with the investigation. Slade stayed at her house and drove her daughter's car in lieu of him having to pay for a hotel and rental car. He stayed two nights. Slade's cellular telephone is (202) 359-6406.

Kamau told Ivory that they would have to get Capt. Barkley to Georgia, because the laws of recording people were different there and if they obtained anything in Florida, it would not be admissible in court.

Ivory stated that the previous Thursday and Friday, May 27-28, 2004, she rented room 315 at the Jameson Inn, Bainbridge, Georgia. She rented the room in her name and paid by check. She arranged for Capt. Barkley to meet her at the Chart House Restaurant for lunch that Friday. While they were there, Greg Slade sat near them and video/audio taped their conversations. After lunch she and Barkley went up to her room. He went through her clothes and walked around the room and told her that he had to go run some errands and would be back in fifteen (15) minutes. He never came back. Barkley called her the next day and told her that he did not come back because he saw a vehicle that belonged to the media and since he was running for office he did not want them to see him there. He asked her if she had seen a black Lincoln Navigator. Ivory told Barkley that she had not seen it because she knew it to be Kamau's vehicle. According to Ivory, Kamau later told her that he had been "burned", meaning that he felt that Barkley picked up on his surveillance.

That same Friday, Barkley gave her an invitation to a cookout at his house relating to his campaign for Sheriff. He told her that if she did not come she was not supporting his campaign.

According to Ivory, on May 5, 2004, she was in Barkley's Office. He shut and locked the door as he often did. He told her he loved her.

Ivory stated that on May 24, 2004, Capt. Barkley came to her house while she was out on sick leave. He told her that the purpose of the visit was to serve her a subpoena, which he did. While inside her house, Barkley took his penis out of his pants and asked her if he could "put it in". She told him no and to put it back into his pants. He kept telling her she was pretty.

According to Ivory, every time she would go home or call in sick, Barkley would tell her "You just need a dick." or "You just need a man.".

Ivory stated that sometime at the beginning of the year her patrol car would not start in her

Page 2

| Case Number: | TL-73-1622 |
| IR Number: | 1 |

driveway. She called the GCSO and Sergeant (Sgt.) Jackson and Eddie Lee Hollis (the mechanic) came to her house to pick up the keys. Sgt. Jackson told everyone at the GCSO that she answered the door naked when he picked up her car keys. The next day Dep. Larry Smith came to her house to pick her up for work. All of the other deputies were joking with him via Nextel phone about how long it was taking him to get to the office. Ivory asked Capt. Sadler about getting a new vehicle because her's was always breaking down. Capt. Sadler told her that the only way she could have a new car is if she would "get in the back of the truck". She understood it to mean that he wanted to have sex with her. According to Ivory, Capt. Sadler told her on another occasion that he wanted to have sex with her. He further stated that he lived near her and would come get her.

SA Bevino asked Ivory if Barkley had ever threatened her with firing or anything else. She stated that he has never threatened her except for the time when they had disagreed on how to write a report on a child abuse case. Ivory wrote in her report that a child had bruises. Barkley told her to change her report to reflect that the child did not have bruises because that is what he had written in his report. Ivory told him that she was not going to lie. Barkley told her that police officers stick together and then told her "I'm going to choke you" and also told her "Get the fuck out of my office". She said that she wrote the Sheriff a letter regarding the matter, but never received a response.

On Thursday, June 3, 2004, Ivory went to the GCSO to pay for her insurance. While inside Barkley's Office, he mouthed to her "I want to fuck you tonight" and gave her a small piece of paper with the words "To Night" underlined and 9:00 PM written underneath. According to Ivory, he tore it in half and placed it on his desk. As she was leaving, she grabbed both pieces of the note and left his office. Ivory stated that Barkley followed her out asking for the note back. She said he was afraid that she would blackmail him with it. According to Ivory, she told him to get it himself if he wanted it.

SA Bevino asked Ivory how long she has know Barkely. She stated that ten (10) years ago she was married to Barkley's wife's sister's son, Larry Ivory.

Ivory stated that she was afraid to go to Sheriff Woodham with her allegations against Barkley because the Sheriff often acts inappropriately as well. Ivory recounted one occurance on April 11, 2004. Sheriff Woodham gave her a ticket to an event for that evening with professional football player Dexter Jackson. He told her that he was not going and wanted her to have it if she wanted it. He further told her that he would like to see what she looked like in an evening gown. On the back of the ticket, Sheriff Woodham wrote the number 633. He told her that was the number of days she had to sleep with him and not get in any trouble. She stated that Major Sadler was present when Sheriff Woodham made the statement. She stated that she did not go to the event, but saved the invitation and placed it into a plastic bag. She still has possession of it at her house.

SA Bevino asked Ivory how she came about her employment at the GCSO. She stated that she met Deputy Jenkins at a convenience store in Havana. He discovered through conversation that she had been through police standards and recommended her to the Sheriff. She later had an interview with the Sheriff and he hired her to be a SRO starting in June of 2002. According to Ivory, she had to sit in Barkley's Office every day until school started in August of that year with occasional assignments to the investigations division.

Ivory stated that she had been offered a job first with the Quincy Police Department (QPD). She was going to take the job, but decided to stay within the State Retirement System and further, that she did not like what the Chief of Police, Rodney Moore, said to her during her

interview. According to Ivory, Moore told her that he wanted to start her out in investigations at $2,000.00 more than the regular starting salary, however, she would have to be his girlfriend. She declined the job. Upon leaving the Police Department, Officer Tom Murray (NFI) ran her off the road. He then told her that she should have taken the job at QPD and further stated that he thought she had better judgement. He told her she was a bitch and a whore and then left.

SA Smith asked Ivory if she would take a polygraph if later asked. She stated that she would because she is afraid that nobody will believe her allegations because she left the DHSMV because of sexual harassment. She stated that she was Alvin Burney's Administrative Assistant. She complained that he had been sexually harassing her and the Florida Highway Patrol (FHP) investigated. The FHP sustained the charges and Burney was terminated. She received a $10,000.00 settlement and had to leave their employ as per the settlement agreement.

After leaving the DHSMV, Ivory went through the police academy for five to six months and was unemployed. According to Ivory, when the GCSO contacted the DHSMV to verify employment, the DHSMV told the GCSO that she was not terminated. Ivory feels that they should not have told the GCSO that she had been terminated.

Ivory gave SA Bevino the black purse that contained a video/audio recorder, along with a blue digital recorder containing data. Both belong to Kamau. Ivory also provided SA Bevino with two notebooks containing her notes of the above mentioned events, her personal digital recorder, a roll of film containing, according to Ivory, pictures of her caller I.D. showing the phone numbers of Barkley. She also downloaded her personal notes from her laptop computer to a disc and provided the disc to SA Bevino. Ivory also gave SA Bevino four cassette tapes that she had made of her answering machine messages, as well as, personal recollections of events and copies of Kamau's tapes from the restaurant and hotel. SA Bevino made all four cassette tapes permanent prior to having them copied.

While Ivory was at the FDLE, she called her answering machine and SA Bevino tape recorded her messages. Several were from Barkley, several were from Pastor Williams, several were from friends. SA Bevino made the cassette tape permanent.

SA Tal Whiddon took photographs of the purse camera and how it was wired to record audio and video. SA Tal Whiddon then removed the tape and copied it to two (2) VHS tapes. He also copied the data from the blue Olympus digital recorder to three (3) cassette tapes and provided all of the above to SA Bevino. SA Bevino made the video and audio tapes permanent.

SA Bevino returned the purse camera without the tape and the Olympus recorder, with the data deleted, to Diop Kamau on June 11, 2004 in the lobby of the FDLE. Kamau signed a receipt stating that he received the property.

On June 18, 2004, the following items were submitted into evidence at the FDLE.

> Exhibit 1) Ivory's personal digital recorder containing data.
>
> Exhibit 2) A compact disc (CD) containing photo's of purse camera.
>
> Exhibit 3) The original tape from Kamau's video recorder.
>
> Exhibit 4) Three (3) cassette tapes made from Kamau's digital recorder.

Page 4

Case Number: TL-73-16∠2
IR Number: 1

The following items will be maintained in the Related Items Section of the case file:

1) The subpoena that Barkey served on Ivory at her home.

2) The note that Barkley gave to Ivory with "To Night" written on back.

3) The cassette tape made from Ivory's answering machine.

4) The Floppy Disc copied from Ivory's laptop computer containing her notes.

5) Copies of the pages in both of Ivory's notebooks, including a copy of the invitation to Barkley's campaign cookout.

6) The receipt provided to Ivory from SA Bevino for property.

7) The receipt showing that SA Bevino gave back Kamau's property.

8) A signed authorization to record Ivory's phone messages signed by Ivory.

9) 2 cassette tapes recorded from Ivory's personal digital recorder.

10) 4 cassette tapes (copies) of Ivory's recollections and hotel and restaurant audio of conversations with Barkley.

11) The case tracking and evidence submission forms.

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### INVESTIGATIVE REPORT

On Thursday, June 3, 2004, Special Agents Mike Smith and Gina Bevino of the Florida Department of Law Enforcement (FDLE) met with Deputy Miriam Ivory of the Gadsden County Sheriff's Department regarding her complaint of sexual harassment by Captain Robert Barkley of the Gadsden County Sheriff's Department. The purpose of the meeting was to determine if Deputy Ivory's complaint was criminal in nature.

On June 3, 2004, Government Analyst Barbara Jackson requested confidential information from the Agency for Workforce Innovation for Don Carlos Jackson, aka/Diop Kamau  The requested information will be maintained in the related item section of this case file.

| Case Number:TL-73-1622 | Serial #:2 |
|---|---|
| Author:Jackson, Barbara J | Office:Tallahassee |
| Activity Start Date:06/03/2004 | Activity End Date:06/03/2004 |

Approved By:Phillips, Mike

Description:Agency for Workforce Innovation confidential information.

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

201020041215132811

FLORIDA DEPARTMENT OF LAW ENFORCEMENT
INVESTIGATIVE REPORT

On Thursday, June 3, 2004, Special Agent (SA) Mike Smith and SA Gina Bevino of the Florida Department of Law Enforcement (FDLE) met with Deputy (Dep.) Miriam Ivory of the Gadsden County Sheriff's Office (GCSO) regarding her complaint of sexual harassment by Captain (Capt.) Robert Barkley also of the GCSO. The purpose of the meeting was to determine if Dep. Ivory's complaint was criminal in nature. Dep. Ivory made allegations that her captain, Robert Barkley, had been making unwanted sexual advances since she's been employed at the GCSO.

On Friday, June 4, 2004, at approximately 10:30 pm, the Florida Investigative Support Center (FISC) of the Tallahassee Region of the FDLE contacted Special Agent (SA) Gina Bevino to state that Dep. Miriam Ivory wanted to speak to her. The FISC analyst patched the phone call through to SA Bevino's residence. Dep. Ivory stated that everyone has been trying to contact her since she left the FDLE office the day before. She stated that Pastor Phillips, Diop Kamau and Capt. Barkley had been calling her and leaving messages. She stated that Kamau left her a message that if he did not hear from her he was going to go to the GCSO and report her as a missing person and name Barkley as a suspect in her disappearance. (When she left the FDLE the day before, SA Bevino told her not to contact anyone until the FDLE could determine what was going on.) She further stated that she had just contacted the dispatch center at the GCSO and told them that she was alright and was working with the FDLE. She told them not to let anyone know her whereabouts, just that she was alright.

During that same time frame, Sergeant (Sgt.) Calvin Bedenbaugh contacted Special Agent Supervisor (SAS) Mike Phillips to inquire about the safety of Dep. Ivory. SAS Phillips told him that she was fine and that FDLE would be in contact with Sheriff Woodham the following week.

| Case Number:TL-73-1622 | Serial #:3 |
|---|---|
| Author:Bevino, Gina | Office:Tallahassee |
| Activity Start Date:06/04/2004 | Activity End Date:06/04/2004 |

Approved By:Phillips, Mike

Description:Phone call from Dep. Miriam Ivory.

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

201020041215132813

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
**INVESTIGATIVE REPORT**

On Thursday, June 3, 2004, Special Agent (SA) Mike Smith and SA Gina Bevino of the Florida Department of Law Enforcement (FDLE) met with Deputy (Dep.) Miriam Ivory of the Gadsden County Sheriff's Office (GCSO) regarding her complaint of sexual harassment by Captain (Capt.) Robert Barkley also of the GCSO. The purpose of the meeting was to determine if Dep. Ivory's complaint was criminal in nature. Dep. Ivory made allegations that her captain, Robert Barkley, had been making unwanted sexual advances since she's been employed at the GCSO.

On Monday, June 7, 2004, at approximately 12:40 pm, Dep. Ivory again contacted the Florida Investigative Support Center (FISC) in order to contact SA Gina Bevino. Ivory was patched through to SA Bevino's cellular phone. Dep. Ivory stated that Diop Kamau left her a voice mail stating that she was depriving him of his equipment and that she had 48 hours to get it back to him or his lawyer would send her a letter saying he would be suing her for $1,000.00. SA Bevino told Ivory that she would be in contact with Kamau that afternoon and would let him know that she had his equipment.

Special Agent Supervisor (SAS) Mike Phillips told SA Bevino that Ivory had left him a message on his voice mail of Kamau's voice mail to her. SAS Phillips and SA Bevino listened to the message and both agreed that it was not threatening in any way, he was basically telling her that if he did not get his equipment back, he would be contacting his lawyer.

SA Bevino contacted Mr. Kamau who agreed to come to the FDLE office that afternoon.

| Case Number:TL-73-1622 | Serial #:4 |
|---|---|
| Author:Bevino, Gina | Office:Tallahassee |
| Activity Start Date:06/07/2004 | Activity End Date:06/07/2004 |

Approved By:Phillips, Mike

Description:Phone call from Dep. Ivory re: message left by Kamau.

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

201020041215132814

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### INVESTIGATIVE REPORT

On Thursday, June 3, 2004, Special Agent (SA) Mike Smith and SA Gina Bevino of the Florida Department of Law Enforcement (FDLE) met with Deputy (Dep.) Miriam Ivory of the Gadsden County Sheriff's Office (GCSO) regarding her complaint of sexual harassment by Captain (Capt.) Robert Barkley also of the GCSO. The purpose of the meeting was to determine if Dep. Ivory's complaint was criminal in nature. Dep. Ivory made allegations that her Captain, Robert Barkley, had been making unwanted sexual advances since she's been employed at the GCSO.

On Monday, June 7, 2004, at approximately 2:30 p.m., Special Agent Supervisor (SAS) Mike Phillips and SA Alex Gaskins and SA Gina Bevino met with Diop Kamau at the FDLE Office in Tallahassee, Florida. Kamau is the Executive Director of the Police Complaint Center (PPC). SA Bevino escorted Mr. Kamau to the interview room in the Tallahassee Regional Operations Center (TROC). On the way to the interview room, Mr. Kamau asked if his statement was going to be recorded. SA Bevino told him that he was not going to be recorded, the FDLE was conducting an inquiry into Dep. Miriam Ivory's allegations against Capt. Barkley and SA Bevino wanted to know the nature of his business with her. He stated that he brought his own tape recorder with him, but did not intend on recording anything unless he was going to be recorded. SA Bevino told Mr. Kamau that she had his equipment and would return it to him as soon as she determined if the recordings contained evidence of criminal activity. Mr. Kamau stated to take as long as needed, he was glad to hear that FDLE had the equipment, he thought that Ivory still had it and was concerned that she was utilizing it illegally. Kamau further stated that he had not heard from her since Wednesday or Thursday of the previous week.

SA Bevino told Kamau that Dep. Ivory came to FDLE on the advice of a friend of hers in law enforcement and further that SA Bevino had told Ivory not to contact him (Kamau) or anyone else until the FDLE could analyze all of the information she had provided. SAS Phillips told Kamau that at that time the FDLE did not have a formal investigation open, only an inquiry.

Kamau provided the following information regarding how he became involved with Dep. Ivory:

- He stated that he was contacted by S.L. Phillips who is the Chapter President of the Southern Christian Leadership Conference (SCLC). Pastor Phillips told him that Ivory was being sexually harassed and stalked by someone at the GCSO. He further stated that the news magazine 20/20 was going to air the story if it developed, but he now doubted that he would take it to them because he did not like the direction it began to take. According to Kamau, Ivory did not like to follow directions and often would get belligerent with him wanting to do things her own way. She was also very emotional at times. Kamau said that

| Case Number:TL-73-1622 | Serial #:5 |
|---|---|
| Author:Bevino, Gina | Office:Tallahassee |
| Activity Start Date:06/07/2004 | Activity End Date:06/07/2004 |

Approved By:Phillips, Mike

Description:Meeting with Diop Kamau.

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

| Case Number: | TL-73-1622 |
|---|---|
| IR Number: | 5 |

he had instructed her to let Barkley make the advances as she stated he always did. Kamau told her not to "bait" him, however, of all the recordings they made, it appeared to Kamua that she was the one making the advances as if to entrap him. She became very angry with Kamau last week because he told her that they did not have enough evidence to take the complaint public. Ivory felt like they did.

- Kamau stated that when they first began working together, he told her that they would need to go to Georgia to tape Barkley because if they did it in Florida they would not be allowed to use the evidence. He feels that the laws are different in Georgia. They (Kamau and an associate, Greg Slade, NFI) had Ivory set up a lunch date with Barkley at the Chart House in Bainbridge, Georgia. Ivory had also obtained a motel room at the Jameson Inn next door to the restaurant. Kamau had set up the room with video surveillance and Slade was set to video the lunch date between Ivory and Barkley at the restaurant. According to Kamau, there was no evidence of inappropriate behavior, use of force, or threats of any kind by Barkley.

- Kamau has driven by Ivory's house about eight (8) times since the last meeting with her looking for his equipment and out of concern for her welfare. He is not sure of her mental state, was concerned that she might be suicidal because she had appeared very depressed.

The meeting ended with Kamau stating that he would cooperate in every way and give FDLE all of the video and audio recordings he had made.

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## INVESTIGATIVE REPORT

On Thursday, June 3, 2004, Special Agent (SA) Mike Smith and SA Gina Bevino of the Florida Department of Law Enforcement (FDLE) met with Deputy (Dep.) Miriam Ivory of the Gadsden County Sheriff's Office (GCSO) regarding her complaint of sexual harassment by Captain (Capt.) Robert Barkley also of the GCSO. The purpose of the meeting was to determine if Dep. Ivory's complaint was criminal in nature. Dep. Ivory made allegations that her Captain, Robert Barkley, had been making unwanted sexual advances since she's been employed at the GCSO.

On June 11, 2004, SA Gina Bevino met with Diop Kamau at the FDLE for the purpose of returning his equipment that had been provided by Dep. Miriam Ivory.

Kamau stated that from the beginning of his contact with Pastor Phillips and Miriam Ivory, they have both made statements about wanting to "ruin" Capt. Barkley. (Pastor Phillips is the person with the Southern Christian Leadership Center (SCLC) that hired Kamau to do the investigation. Kamau feels that Phillips and Ivory have "too close" of a relationship. Phillips told Kamau prior to Kamau meeting Ivory, that she was the most beautiful thing he's ever seen. And other comments such as 'she's a knock-out'. Kamau feels that Phillips wants to do a press release and make a name for his chapter of the SCLC.

Kamau stated everyone he has spoken with from the GCSO told him that Ivory is overly friendly with men and is very flirtatious, however, Kamau would not state the names of the person(s) with whom he spoke.

| | |
|---|---|
| Case Number:TL-73-1622 | Serial #:6 |
| Author:Bevino, Gina | Office:Tallahassee |
| Activity Start Date:06/11/2004 | Activity End Date:06/11/2004 |

Approved By:Phillips, Mike

Description:Meeting with Diop Kamau.

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### INVESTIGATIVE REPORT

On Thursday, June 3, 2004, Special Agent (SA) Mike Smith and SA Gina Bevino of the Florida Department of Law Enforcement (FDLE) met with Deputy (Dep.) Miriam Ivory of the Gadsden County Sheriff's Office (GCSO) regarding her complaint of sexual harassment by Captain (Capt.) Robert Barkley also of the GCSO. The purpose of the meeting was to determine if Dep. Ivory's complaint was criminal in nature. Dep. Ivory made allegations that her Captain, Robert Barkley, had been making unwanted sexual advances since she's been employed at the GCSO.

Ivory presented several tape recordings and video recordings that she made alone or with Diop Kamau of the Police Complaint Center acting in a private investigator role. The recordings will be summarized as follows:

None of the recordings have dates or times mentioned unless specified.

The following exhibits are being maintained in evidence at FDLE:

**Evidence-Exhibit 1** is Ivory's digital recorder. The data from the recorder is Ivory at the GCSO. She meets with Barkley. They discuss her payment for insurance coverage. Barkley asks her when she is coming back to work. Barkley tells her that he is very nervous and asks her if she is. He whispers something to her. Ivory tells him that she's tired of him and that she can't read his lips. She then tells him that she does not want to go upstairs because everyone will see them together and things will get worse.

Barkley tells her that she is pretty. Ivory asks him why he didn't come back last night. He then asks her if she's resigning and they discussed that for a short time. Ivory tells Barkley that she will not work for Major Sadler. Barkley tells her something that's not intelligible on the recording and she replied emphatically "You're so stupid. Why would you say something like that?" Barkley gets on the telephone and the tape ends after approximately 64 minutes and 17 seconds.

**Evidence-Exhibit 3** is a video tape made from a concealed digital camera provided to Ivory by Diop Kamau. The tape shows Ivory driving in a vehicle and arriving at the GCSO. She talks to a female for a time, general conversation. Ivory enters Barkley's office where he is sitting behind a desk. They speak at a very low volume. Barkley receives a phone call and is on the phone for a good while. She leaves the office without taking the concealed camera and it continues to record Barkley's telephone conversations. Ivory returns a short time later and Barkley is still on the phone. She walks around the office looking at things on the wall and

| Case Number:TL-73-1622 | Serial #:7 |
|---|---|
| Author:Bevino, Gina | Office:Tallahassee |
| Activity Start Date:10/05/2004 | Activity End Date:10/05/2004 |

Approved By:Phillips, Mike

Description:Overview of evidence.

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

201020041215132818

| | |
|---|---|
| Case Number: | TL-73-1622 |
| IR Number: | 7 |

picks up something from his desk. She appeared to whisper something to him. The tape ends prior to her leaving the office.

**Evidence-Exhibit 4** is the data made from Kamau's digital recorder.

The first session contains 16 minutes and 21 seconds of conversation and background. It is a male and female, however, nothing can be discerned.

The second session contains 16 minutes and 58 seconds of mostly background and television noise. No conversation.

The third and final session contains 1 hour, 22 minutes and 9 seconds of a female talking. Not loud enough to interpret.

The following exhibit is being maintained in the Related Items Section of the case file:

**Related Item-Exhibit 10** is four (4) cassette tapes of Ivory's recollections, as well as duplicates of the hotel and restaurant audio tapes of which Kamau has originals.

Tape labeled _Recollections 1_. Ivory states her name and the date of May 25, 2004, at midnight. She discusses the same things she told SA Bevino and SA Smith during her interview.

The tape labeled _Hotel side #1, 05-28-04,_ is of Ivory's lunch meeting with Capt. Barkley at a restaurant in Bainbridge, Georgia. They have a great deal of general conversation. Tape is difficult to understand due to the background noise.

Barkley tells her to come back to work that her job is safe and will be there.

At one point, Barkley tells her that he knows what she needs. Ivory stated "What do I need?" to which Barkley replied "What do you need". Ivory then stated that he and the Sheriff have both told her that she needed a "dick". Ivory was giggling as she said it. She then stated that she did not need a man because they caused too many headaches.

Further along in the conversation Ivory asks Barkley how he is going to protect her from the guys who are always telling her to "get into the back of the truck". He told Ivory that she needed to quit "playing with them". She told him emphatically that she does not play with anybody. Barkley told her that she hugs them and he did not like it. Ivory told him that she is the same with everybody and that he hugs her. Barkley emphatically stated that he had never hugged her. Ivory called him a damned liar.

They discuss work again and Barkley told Ivory that she did a good job.

Barkley and Ivory begin to leave the restaurant and Ivory asked him if he was just going to meet her there (Referring to the hotel room). Barkley stated that he would and he knew what room she was in. Tape ends.

Tape labeled _Hotel from Restaurant #2_. Television on in background. Knock on door. Male and female talking, but unintelligible. Tape ends.

| Case Number: | TL-73-1622 |
|---|---|
| IR Number: | 7 |

Tape labeled *Ends June 1, 2004 Begins prior to*.  Phone call between Ivory and Barkley.  She tells him that she is going to resign because she has a lot on her mind.  He tries to get her to talk to him about it.  He told her that he did not want to accept her resignation and that things will get better.

Ivory inquired as to what he saw the other night that made him leave her (Referring to the hotel room).  He told her that he had to be careful because Spooner had thought that she was trying to set him up and that he needed to be careful because he was not going to let anything deter him from being a special selection.

Barkley tells her "I would not quit, if they were going to fire you that would be different, but no one's going to fire you." End of call.

Another phone call:

**Barkley:** I love you, you know that?

**Ivory:** You love me?

**Barkley:** Anything wrong with that?

**Ivory:** No, there ain't nothing wrong with that. Do you still want to do what you were going to do on Friday?

**Barkley:** Yea. Are you sure it's okay?

**Ivory:** You, you the one that wants to do it, but where now?

**Barkley:** What now?

**Ivory:** Where now:

**Barkley:** Well, I just want to make sure it's okay, I want to make sure everything is okay.

**Ivory:** Well it can't be in Florida then because that's where everybody is.

**Barkley:** Okay, you scared of Florida?

**Ivory:** Aren't you scared of Florida?

**Barkley:** I'm scared of everywhere.

**Ivory:** Well what do you want me to do?

**Barkley:** Well, just sit tight and I'll call you, who will be home tonight?

**Ivory:** Well I don't know.

**Barkley:** Are you scared, you asked me to come by there, if you want me to I'll come by.

Case Number: TL-73-1622
IR Number: 7

Ivory:      Well you just said you didn't know what they were gonna do.

Barkley:    Who?

Ivory:      You just said you didn't trust them.

Barkley:    No, I ain't gonna stay the night, I'll just come by there if you want me to-it's a
            volunteer thing.

Ivory:      It's a volunteer thing? How you gonna say it's a volunteer thing? That sounds
            stupid.

Barkley:    It's what you wanna do ain't it?

Ivory:      It's what you told me you wanted to do.

Barkley:    Well it's what you want to do..

Ivory:      Whatever it takes for me to keep my job and please you I will do it.

Barkley:    Wait a minute now! That's what I'm afraid of. You ain't got to do nothing with me to
            keep your job. This got nothing to do with your job.

Ivory:      Well you been looking out for me.

Barkley:    No, no, this ain't got nothing to do with your job. That's what I don't like. When you
            said something like that. This has nothing to do with your job.

Ivory:      Alright, well..

Barkley:    I don't even wanna come nowhere near you if you think this has something to do
            with your job.

The conversation changed and they discussed trusting each other and respect. They
discussed work again and whether she would come back.

Ivory called Barkley several more times and was upset with him for not calling and wasting her
time.

On June 14, 2004, Diop Kamau gave SA Bevino two (2) CD's with video recordings of Ivory and
Barkley at the Charter House Restaurant and Inn, Bainbridge, Georgia. The following is a brief
synopsis of the recorded events:

The CD labeled *GAD-Chart-Eating-Hotel* contains footage of Barkley arriving at the Charter
House driving a white Ford SUV (According to DHSMV Barkley has a white Ford SUV
registered to him). Barkley exits the truck and walks toward restaurant. Does not show him
enter the restaurant. Shows Barkley exit restaurant, get into SUV and drive off.

The CD labeled *Charter House Bag Cam-GAD* contains footage of Miriam Ivory alone at a table
in a restaurant. Barkley walks up to her table and asks her to move to the table next to it. They

sit down and eat lunch. Too much background noise to hear the Barkley/Ivory conversation.

The two (2) CD's will be maintained in the Related Items Section of the case file.

On July 29, 2004, Diop Kamau gave SA Bevino five (5) CD's and one (1) video cassette copied from his files.

CD labeled *GB-1, 07-29-04* contains audio of Ivory leaving message for Barkley.

CD labeled *GB-2, 07-29-04* contains audio of Ivory attempting to make phone call. She tells someone that he (Barkley) will get suspicious of the telephone number she is calling from.

CD labeled *GB-3, 07-29-04* contains audio of Ivory receiving instruction from Greg Slade, Kamau's associate, on how to speak to Barkley. Barkley answers and he tells her he'll call her back.

CD labeled *GB-4, 07-29-04* contains audio of Ivory talking to Barkley about resigning and being under pressure. More of the same audio tracks as on CD's 1,2 and 3.

Audio of Diop Kamua instructing Greg Slade on how to instruct Ivory when she makes call to Barkley.

More audio on Ivory wanting to resign and Barkley telling her that things will get better. (Same audio as one (1) of tapes in Exhibit 10.)

CD labeled *GB-5, 07-29-04* contains audio of Ivory talking about resigning. (Same as GB-4.)

Video tape labeled *GB-6, 07-29-04* contains footage of Ivory in a hotel room. Barkley enters hotel room, walks around and then leaves. (No Audio) Both are wearing same clothing as they had on in Charter House.

All CD's and the video tape will be maintained in the Related Item Section of the case file.

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## INVESTIGATIVE REPORT

On Thursday, June 3, 2004, Special Agent (SA) Mike Smith and SA Gina Bevino of the Florida Department of Law Enforcement (FDLE) met with Deputy (Dep.) Miriam Ivory of the Gadsden County Sheriff's Office (GCSO) regarding her complaint of sexual harassment by Captain (Capt.) Robert Barkley also of the GCSO. The purpose of the meeting was to determine if Dep. Ivory's complaint was criminal in nature. Dep. Ivory made allegations that her Captain, Robert Barkley, had been making unwanted sexual advances since she's been employed at the GCSO.

On Monday, October 18, 2004, Diop Kamau sent SA Bevino, via US Mail, a CD containing a video file of Miriam Ivory and Capt. Robert Barkley recorded in what appeared to be Capt. Barkley's Office located within the GCSO. Diop Kamau of the Police Complaint Center (PCC) has the original video tape at the headquarters of the PCC. The date the video was made is unknown.

The video is approximately eight (8) minutes long and although it has audio, it is impossible to understand what is being said. The video shows Ivory walk into the office and Barkley is behind a desk. At one point Ivory stood up and walked to the corner of Barkley's desk. What appears to be Barkley's hand, grabbed Ivory's backside. Ivory stood there for a few seconds and then sat back down in a chair across the desk from Barkley.

The CD will be maintained in the Related Items Section of the case file.

| Case Number:TL-73-1622 | Serial #:8 |
|---|---|
| Author:Bevino, Gina | Office:Tallahassee |
| Activity Start Date:10/18/2004 | Activity End Date:10/18/2004 |

Approved By:Phillips, Mike

Description:Video of Miriam Ivory and Capt. Robert Barkley.

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### INVESTIGATIVE REPORT

On Thursday, June 3, 2004, Special Agent (SA) Mike Smith and SA Gina Bevino of the Florida Department of Law Enforcement (FDLE) met with Deputy (Dep.) Miriam Ivory of the Gadsden County Sheriff's Office (GCSO) regarding her complaint of sexual harassment by Captain (Capt.) Robert Barkley also of the GCSO. The purpose of the meeting was to determine if Dep. Ivory's complaint was criminal in nature. Dep. Ivory made allegations that her Captain, Robert Barkley, had been making unwanted sexual advances since she's been employed at the GCSO.

On October 7, 2004, at approximately 9:30 a.m., at the request of SA Gina Bevino, SA Eric Daniel interviewed Capt. Robert Barkley at his office at the GCSO. Present at this interview was Capt. Cecil Morris with the GCSO. SA Daniel explained to Capt. Barkley that he did not have to talk to him and could have an attorney present if he so chooses. Capt. Barkley stated that he understood and had nothing to hide and would be happy to answer questions regarding the Miriam Ivory allegations. Capt. Barkley stated Dep. Ivory has worked for GCSO for almost two (2) years. Capt. Barkley stated Dep. Ivory has worked for him her entire time at the Sheriff's Office. Capt. Barkley stated Dep. Ivory is a School Resource Office and he is the supervisor for the School Resource Officer program. Capt. Ivory stated he has personally known Dep. Ivory for about ten (10) years, stating she used to be married to his nephew.

Capt. Barkley stated that he was not aware of any medical or mental problems with Dep. Ivory until Diop Kamau from the "Police Complaint Center" told him she was on a large quantity of medication and believed she has been seeing a counselor.

Capt. Barkley stated that he has never talked to Dep. Ivory about her breast and has never exposed himself to her either at work or outside of work. Capt. Barkley stated around the end of the first school year he received a call from the principle saying he didn't want Dep. Ivory back in his school. Capt. Barkley stated he moved Dep. Ivory to another school and that principle didn't want her either. Capt. Barkley stated that Dep. Ivory was missing a lot of days claiming she was sick. Capt. Barkley stated he thinks she was missing work to run a printing business she was operating from her home. Capt. Barkley stated that Dep. Ivory had missed about six (6) weeks of work just prior to her allegations against him.

Capt. Barkley stated Dep. Ivory asked him if she should turn in her resignation. He stated he told her that it was her decision to make, not his. Capt. Barkley stated Dep. Ivory called him numerous times at work, as well as on his personal phone. He stated she tried to get him to a motel and was having him followed for two (2) months.

| Case Number:TL-73-1622 | Serial #:9 |
|---|---|
| Author:Daniel, Eric W | Office:Tallahassee |
| Activity Start Date:10/07/2004 | Activity End Date:10/07/2004 |

Approved By:Phillips, Mike

Description:Interview with Captain Robert Barkley

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

201020041215132821

Case Number: TE-73-1622

IR Number: 9

Capt. Barkley stated Dep. Ivory was real aggressive with all the men at the Sheriff's Office. Capt. Barkley stated Dep. Ivory told him she was depressed and wanted to talk to him about her resignation. Capt. Barkley stated he told her he would be at the Charter House Restaurant, Bainbridge, Georgia, if she wanted to meet him there. Capt. Barkley stated when he arrived at the restaurant she was already there sitting in a corner. Capt. Barkley stated she sat with him and kept trying to get him to go back to her motel room. Capt. Barkley stated she told him she had her letter of resignation back at her hotel room behind the restaurant. Capt. Barkley stated he went to the hotel room door and Dep. Ivory told him she didn't have the resignation so he left. Capt. Barkley stated Dep. Ivory talked about resigning because she didn't want to go back on the road. Capt. Barkley stated he found out later that he was being video taped without his knowledge.

Capt. Barkley stated that back in May he went to Dep. Ivory's house to serve a subpoena on her. She asked him to come in and look at her new furniture and wanted to make a copy of her leave sheet. He stated Dep. Ivory was wearing a dress with no panties on underneath it. Capt. Barkley stated Dep. Ivory sat in a chair and exposed herself to him. Capt. Barkley stated he immediately left. He stated her phone calls to him seem to increase after that day. Capt. Barkley again stated he has never exposed himself to Dep. Ivory.

The interview ended at approximately 10:00 a.m.

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## INVESTIGATIVE REPORT

On Thursday, June 3, 2004, Special Agent (SA) Mike Smith and SA Gina Bevino of the Florida Department of Law Enforcement (FDLE) met with Deputy (Dep.) Miriam Ivory of the Gadsden County Sheriff's Office (GCSO) regarding her complaint of sexual harassment by Captain (Capt.) Robert Barkley also of the GCSO. The purpose of the meeting was to determine if Dep. Ivory's complaint was criminal in nature. Dep. Ivory made allegations that her Captain, Robert Barkley, had been making unwanted sexual advances since she's been employed at the GCSO.

On October 26, 2004, Diop Kamau of the Police Complaint Center dropped off a CD at FDLE for SA Gina Bevino. The CD contains several taped conversations between Captain Robert Barkley and Miriam Ivory. Most of the recordings were telephone conversations. One (1) recording was made between Ivory and Barkley from somewhere within her house. The CD contains 35.13 minutes of recording time. The following is a synopsis of each conversation. Unless specified, no date or time was specified prior to Ivory making the recording.

The first recording is Ivory and Barkley on the telephone. SA Bevino was unable to determine who called who. During the conversation, Ivory asks Barkley if he wants to go to the Charter House Restaurant (in Bainbridge, Georgia) for lunch. They discuss it. The remainder is general conversation.

The second recording is Ivory calling Barkley. Ivory states prior to the call the date is May 21, 11:40 a.m. Ivory tells Barkley that her therapist just arrived at her house. Barkley told her that he was in Tallahassee and for her to call him when her therapist left if she wanted him to come over.

The third recording is Ivory calling Barkley. Ivory states prior to the call the date is May 24. Barkley answered and said he'd call her back.

The fourth recording is Barkley calling Ivory. He told her he had a subpoena for her for tomorrow. He asked if she wanted him to bring it to the restaurant because he could be there in 15-20 minutes. She said she needed to give him her papers. Barkley suggested that he could come to her house. Ivory stated that she did not want him to because people drive by her house all the time and would see his car there. Barkley said that it did not matter, he was going to tell them that he was going to serve her with a subpoena. Ivory stated that the papers she needed to give him would not be signed by her doctor until at least 5:00 p.m. Barkley stated that he would call her when he got to Havana.

| Case Number:TL-73-1622 | Serial #:10 |
|---|---|
| Author:Bevino, Gina | Office:Tallahassee |
| Activity Start Date:05/01/2004 | Activity End Date:06/03/2004 |

Approved By:Phillips, Mike

Description:Recordings of Miriam Ivory and Robert Barkley.

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

201020041215132823

| Case Number: | TL-73-1622 |
|---|---|
| IR Number: | 10 |

The fifth recording is Ivory talking with Diop Kamau, possibly on speaker phone. The conversation changes to Ivory and Barkley at her residence. Barkley tells her that her place is fixed up nice. Most of the conversation is unintelligible until Ivory stated very loudly " Put that thing back in your pants!  What's wrong with you?"  The remainder of their conversation is unintelligible.  After Barkley leaves Ivory is talking again with Kamau.  Ivory tells Kamau that Barkley took his penis out of his pants.  Kamau asked her if he was erect and Ivory stated that it was 'hard', but he did not ejaculate.  Ivory further told Kamau that after she told him to put it back in his pants he asked her if he could 'put it half way in'.  Ivory told Kamau that she told Barkley that she'd do it somewhere else.  Kamau told her he'd get that set up.

The sixth recording is Ivory calling Barkley at work.  She got his voice mail and left him a message that she would not be in to work.

The seventh call was to a Mr. Everly (not sure of name).  They discussed her subpoena and a court case.

The eighth call was from her pastor.  He told her that Diop Kamau was trying to get in touch with her and for her to call him.

The CD will be maintained in the Related Item Section of the case file.

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## INVESTIGATIVE REPORT
(Draft)

On Thursday, June 3, 2004, Special Agent (SA) Mike Smith and SA Gina Bevino of the Florida Department of Law Enforcement (FDLE) met with Deputy (Dep.) Miriam Ivory of the Gadsden County Sheriff's Office (GCSO) regarding her complaint of sexual harassment by Captain (Capt.) Robert Barkley also of the GCSO. The purpose of the meeting was to determine if Dep. Ivory's complaint was criminal in nature. Dep. Ivory made allegations that her Captain, Robert Barkley, had been making unwanted sexual advances since she's been employed at the GCSO.

SA Bevino completed an investigative summary of the case. The summary will be maintained in the related items section of the case file.

| Case Number:TL-73-1622 | Serial #:11 |
|---|---|
| Author:Bevino, Gina | Office:Tallahassee |
| Activity Start Date:12/07/2004 | Activity End Date:12/07/2004 |

Approved By:

Description:Conversation with ASA Rich Combs.

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

| Case Number: | TL-73-1622 |
|---|---|
| IR Number: | 11 |

# References

Persons

| Person # | Name | Race/Sex | Birth Date | Involvements |
|---|---|---|---|---|
| 52465 | Barkley, Robert Earl sr | Black/Male | 12/01/1946 | Subject, |
| 619591 | Williams-Ivory, Miriam A | Unknown/Female | 01/26/1968 | Subject, |

## INVESTIGATIVE REPORT

(Draft)

On Thursday, June 3, 2004, Special Agent (SA) Mike Smith and SA Gina Bevino of the Florida Department of Law Enforcement (FDLE) met with Deputy (Dep.) Miriam Ivory of the Gadsden County Sheriff's Office (GCSO) regarding her complaint of sexual harassment by Captain (Capt.) Robert Barkley also of the GCSO. The purpose of the meeting was to determine if Dep. Ivory's complaint was criminal in nature. Dep. Ivory made allegations that her Captain, Robert Barkley, had been making unwanted sexual advances since she's been employed at the GCSO.

On November 15,2004, SA Mike Smith took a copy of the case summary to ASA Rich Combs of the State Attorney's Office, Second Judicial Circuit. SA Bevino and SAS Mike Phillips briefed him on the investigation earlier in the day. Combs stated he would review the summary and get back in touch.

| Case Number:TL-73-1622 | Serial #:12 |
|---|---|
| Author:Bevino, Gina | Office:Tallahassee |
| Activity Start Date:11/10/2004 | Activity End Date:11/10/2004 |

Approved By:

Description:Copy of summary provided to ASA Rich Combs

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

| Case Number: | TL-73-1622 |
|---|---|
| IR Number: | 12 |

# References

## Persons

| Person # | Name | Race/Sex | Birth Date | Involvements |
|---|---|---|---|---|
| 52465 | Barkley, Robert Earl sr | Black/Male | 12/01/1946 | Subject, |
| 619591 | Williams-Ivory, Miriam A | Unknown/Female | 01/26/1968 | Subject, |

# DEPARTMENT OF LAW ENFORCEMENT
## INVESTIGATIVE REPORT

On Thursday, June 3, 2004, Special Agent (SA) Mike Smith and SA Gina Bevino of the Florida Department of Law Enforcement (FDLE) met with Deputy (Dep.) Miriam Ivory of the Gadsden County Sheriff's Office (GCSO) regarding her complaint of sexual harassment by Captain (Capt.) Robert Barkley also of the GCSO. The purpose of the meeting was to determine if Dep. Ivory's complaint was criminal in nature. Dep. Ivory made allegations that her Captain, Robert Barkley, had been making unwanted sexual advances since she's been employed at the GCSO.

On November 19, 2004, SA's Alex Gaskins and Gina Bevino along with Special Agent Supervisor (SAS) Mike Phillips met with Sheriff Morris Young of the Gadsden County Sheriff's Office. Agents briefed Sheriff Young about the investigation as he had just been elected and sworn in as Sheriff. Agents told him briefly about the investigation and gave him a copy of the investigative summary. SAS Phillips also told him that the summary had been presented to Rich Combs of the State Attorney's Office for review.

| Case Number:TL-73-1622 | Serial #:13 |
|---|---|
| Author:Bevino, Gina | Office:Tallahassee |
| Activity Start Date:11/19/2004 | Activity End Date:11/19/2004 |

Approved By:Phillips, Mike

Description:Meeting with Sheriff Morris Young.

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

20102005021511 5845

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## INVESTIGATIVE REPORT
(Draft)

On Thursday, June 3, 2004, Special Agent (SA) Mike Smith and SA Gina Bevino of the Florida Department of Law Enforcement (FDLE) met with Deputy (Dep.) Miriam Ivory of the Gadsden County Sheriff's Office (GCSO) regarding her complaint of sexual harassment by Captain (Capt.) Robert Barkley also of the GCSO. The purpose of the meeting was to determine if Dep. Ivory's complaint was criminal in nature. Dep. Ivory made allegations that her Captain, Robert Barkley, had been making unwanted sexual advances since she's been employed at the GCSO.

On November 30, 2004, Linda Bond, Attorny for Gadsden County Sheriff Morris Young contacted SA Gina Bevino and requested a copy of the investigative summary. SA Bevino electronically mailed her a copy on the same date.

| Case Number:TL-73-1622 | Serial #:14 |
|---|---|
| Author:Bevino, Gina | Office:Tallahassee |
| Activity Start Date:11/30/2004 | Activity End Date:11/30/2004 |

Approved By:

Description:Copy of summary provided to Sheriff's attorney Linda Bond.

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

| Case Number: | TL-73-162. |
|---|---|
| IR Number: | 14 |

# References

Persons

| Person # | Name | Race/Sex | Birth Date | Involvements |
|---|---|---|---|---|
| 52465 | Barkley, Robert Earl sr | Black/Male | 12/01/1946 | Subject, |
| 619591 | Williams-Ivory, Miriam A | Unknown/Female | 01/26/1968 | Subject, |

# FLORIDA. DEPARTMENT OF LAW ENFORCEMENT
## INVESTIGATIVE REPORT
(Draft)

On Thursday, June 3, 2004, Special Agent (SA) Mike Smith and SA Gina Bevino of the Florida Department of Law Enforcement (FDLE) met with Deputy (Dep.) Miriam Ivory of the Gadsden County Sheriff's Office (GCSO) regarding her complaint of sexual harassment by Captain (Capt.) Robert Barkley also of the GCSO. The purpose of the meeting was to determine if Dep. Ivory's complaint was criminal in nature. Dep. Ivory made allegations that her Captain, Robert Barkley, had been making unwanted sexual advances since she's been employed at the GCSO.

On December 7, 2004, ASA Rich Combs contacted SA Bevino. He stated that he would not be filing criminal charges in the case. He stated there was no evidence that Barkley exposed himself to Ivory although the audio recording of the "incident" appeared it was possible.

ASA Combs had previoulsy stated to SA Bevino and SAS Phillips that since Ivory was a law enforcement officer, her recording Barkley could have been made under the color of law.

This case will be closed unless new evidence arises.

| Case Number:TL-73-1622 | Serial #:15 |
|---|---|
| Author:Bevino, Gina | Office:Tallahassee |
| Activity Start Date:12/07/2004 | Activity End Date:12/07/2004 |

Approved By:

Description:State Attorney opinion.

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

Case Number: TL-73-16__
IR Number: 15

# References

**Persons**

| Person # | Name | Race/Sex | Birth Date | Involvements |
|---|---|---|---|---|
| 52465 | Barkley, Robert Earl sr | Black/Male | 12/01/1946 | Subject, |
| 619591 | Williams-Ivory, Miriam A | Unknown/Female | 01/26/1968 | Subject, |

# FLO. A DEPARTMENT OF LAW ENFORC .ENT
## INVESTIGATIVE REPORT

On January 7, 2005, Special Agent (SA) Gina Bevino of the Florida Department of Law Enforcement (FDLE) checked out evidence exhibits 1-4 via evidence technician Sandy Phelps.

Exhibit 1-Radio Shack Digital Recorder
Exhibit 2-CD containing photos of black purse with video equipment
Exhibit 3-Digital tape from purse camera (sony 60 minute)
Exhibit 4-3 cassette tapes made from Diop Kamau's digital recorder.

There is nothing remaining in the evidence vault at the FDLE.

The above mentioned items along with a copy of the evidence disposal authorization form and the evidence room file will be maintained in the related items section of the case file.

| Case Number:TL-73-1622 | Serial #:16 |
|---|---|
| Author:Bevino, Gina | Office:Tallahassee |
| Activity Start Date:01/07/2005 | Activity End Date:01/07/2005 |

Approved By:Phillips, Mike

Description:Removal of evidence, place into RI.

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

201020050215115847

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### INVESTIGATIVE REPORT

On January 11, 2005, Special Agent (SA) Gina Bevino contacted Attorney Pat Frank, who is working with Bill Reeves representing Miriam Ivory in a civil matter. SA Bevino told Frank that she had some property to return to Ivory. Frank stated that he would send a currier immediately.

On January 11, 2005, SA Bevino turned over the following property to Amanda Russell:

1 roll of 35mm film, 24 exp.
1 burgundy notebook (hardback)
1 spiral notebook containing invitation to Capt. Barkley's campaign cookout.

The receipt, signed by Russell will be maintained in the Related Item Section of the case file.

| Case Number:TL-73-1622 | Serial #:17 |
|---|---|
| Author:Bevino, Gina | Office:Tallahassee |
| Activity Start Date:01/11/2005 | Activity End Date:01/11/2005 |

Approved By:Phillips, Mike

Description:Return of property.

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

THE LAW OFFICE OF
# H. RICHARD BISBEE, P.A.
*A Professional Association*

1882 Capital Circle, N.E., Suite 206
Tallahassee, Florida 32308

Telephone: (850)-386-5300
Telecopier: (850)-219-0053

E-Mail: hrblaw@electro-net.com
Website: Http://www.thebisbeefirm.com

July 2, 2004

Personal and Confidential

**HAND DELIVERY**

VIA ~~FACSIMILE (850) 875-8881~~

W.A. Woodham
Sheriff
P.O. Box 1709
Quincy, Florida 32363

Dear Sheriff Woodham:

This law firm represents Deputy Miriam Ivory Williams regarding claims in connection with her employment by your Office.

As the result of medical problems resulting from her employment, Ms. Williams has been on medical leave since on or about May 13, 2004. She was recently informed that her leave was about to expire and that she must resign or take some other action on or before today's date. Captain Morris, in your Office, confirmed during a conversation with me yesterday that our client's twelve weeks leave would, in fact, expire on July 3rd or 4th, 2004, and because of the need for other "bodies" her position would be filled.

Our client continues to suffer serious medical problems as the direct result of alleged improper conduct by personnel employed by your Office. She is continuing to undergo treatment by two physicians. As recently as two days ago her doctor advised her that she is not capable of returning to work. A copy of her doctor's written statement regarding her medical status is enclosed for your consideration.

We are not aware of any limitation that would preclude our client from being provided additional leave by your Office or being placed on alternative leave status that will allow her to continue to receive health insurance benefits. Attached for your consideration is a copy of a Department of Management

W.A. Woodham
Sheriff
Page Two (2)
July 2, 2004
Personal and Confidential

Services Rule permitting leave up to six months for state employees. Continued
health  insurance benefits are essential to provide the medical care our client
desperately needs to recover and obtain employment as a law enforcement
officer or in some other capacity she chooses after she is fully recovered.  We
believe that permitting continued access to health insurance is mutually
beneficial to our client and your office since it may, to some extent, potentially
mitigate her damages in any potential  tort claim.

We have met with agents of the Florida Department of Law Enforcement
who are reviewing information provided to them by our client and others
regarding this matter.  We have advised them of our interest in having our client
remain on leave pending the completion of there work.

This is our formal demand that no action be taken by your Office to
terminate our client's employment or otherwise interfere with her continued
access to health insurance benefits currently provided to her in connection with
her employment with your Office.

If there is a problem with granting our request or if you have any
questions please contact us as soon as possible.  We are willing to meet with you
or other members of your staff to further discuss this matter if you think it would
be helpful.

Sincerely,

Bill Reeves
"Of Counsel"

cc: Ms. Ivory Williams

CORAL GABLES OFFICE
121 MAJORCA AVENUE
SUITE N2
CORAL GABLES FL 33134-4501
305-447-7901
FACSIMILE 305-442-1578

ORLANDO OFFICE
1477 WEST FAIRBANKS AVENUE
SUITE 100
WINTER PARK FL 32789-7.13
407-571-2152
FACSIMILE 407-571-1452

REPLY TO: Tallahassee - Marian

LAW OFFICES

# ALLEN, NORTON & BLUE

PROFESSIONAL ASSOCIATION

1669 MAHAN CENTER BOULEVARD
TALLAHASSEE, FL 32308-5454
850-942-5522
FACSIMILE 850-942-5524

TALLAHASSEE DOWNTOWN
906 NORTH MONROE STREET
SUITE 100
TALLAHASSEE, FL 32303-6162
850-561-3503
FACSIMILE 850-561-0332

TAMPA OFFICE
324 SOUTH HYDE PARK AVENUE
HYDE PARK PLAZA, SUITE 350
TAMPA, FL 33606-4127
813-251-1210
FACSIMILE 813-253-2006

July 6, 2004

## VIA FACSIMILE AND UNITED STATES MAIL

Mr Bill Reeves
Attorney at Law
1882 Capital Circle NE, Suite 206
Tallahassee, Florida 32308

RE:    Miriam Ivory Williams

Dear Mr. Reeves:

Our firm has been retained to represent Sheriff W.A. Woodham, in his official capacity as Sheriff of Gadsden County, Florida (Sheriff Woodham or Gadsden County Sheriff's Office), in the above referenced matter and I am the case-handling attorney.

In response to your July 2, 2004 letter, Sheriff Woodham will grant Ms. Williams a leave of absence without pay until July 31, 2004, provided she returns the enclosed medical certification form no later than July 20, 2004. The note previously submitted is insufficient. As discussed, Ms. Williams' rights pursuant to the Family Medical Leave Act expired July 3, 2004, however, in accordance with the health plan provisions, her medical coverage will continue through July 31, 2004. Because Ms. Williams has family coverage, she will still need to remit the $129.08 she currently pays as her share of the premium. The Sheriff's Office will provide her with the necessary forms should she decide to continue her medical insurance beyond that date. Moreover, the leave of absence without pay does not guarantee Ms. Williams any right to return to her same or equivalent position, however she will be considered for any open vacancies. If she is unable to perform the essential functions of her employment following the expiration of the leave of absence without pay, her employment may be terminated.

Although you have attached the State of Florida Department of Management Services rule regarding leave for State employees, this provision and others applicable only to State employees are inapplicable to employees of the Gadsden County Sheriff's Office. Further, the Sheriff's Office will take action regarding Ms. Williams or any other employee pursuant to the Sheriff's Office policies and procedures. Despite your allegation that Ms. Williams suffers serious medical problems as the direct result of alleged improper conduct by Sheriff's Office personnel, she has not filed a workers compensation claim alleging any illness or injury caused by the workplace.

29195_1

Mr. Bill Reeves
July 6, 2004
Page 2

The Sheriff's Office has not received any complaint from Ms. Ivory Williams regarding any employee misconduct. However, if the complaint is received, an investigation will be conducted and appropriate action taken.

Please call me if you wish to discuss this matter.

Sincerely,

Linda G. Bond

LGB/ajh

cc:    Sheriff W. A. Woodham
       Captain Cecil Morris

ALLEN, NORTON & BLUE, P.A.
PROFESSIONAL ASSOCIATION

CORAL GABLES OFFICE
121 MAJORCA AVENUE
SUITE 300
CORAL GABLES, FL 33134-4508
305-445-7801
FACSIMILE 305-442-1578

ORLANDO OFFICE
1477 WEST FAIRBANKS AVENUE
SUITE 100
WINTER PARK, FL 32789-7113
407-571-2152
FACSIMILE 407-571-1496

REPLY TO: Tallahassee - Mahan

LAW OFFICES

**ALLEN, NORTON & BLUE**

PROFESSIONAL ASSOCIATION

1669 MAHAN CENTER BOULEVARD
TALLAHASSEE, FL 32308-5454
850-942-5522
FACSIMILE 850-942-5524

TALLAHASSEE DOWNTOWN
906 NORTH MONROE STREET
SUITE 100
TALLAHASSEE, FL 32303-6143
850-561-3503
FACSIMILE 850-561-0332

TAMPA OFFICE
324 SOUTH HYDE PARK AVENUE
HYDE PARK PLAZA, SUITE 350
TAMPA, FL 33606-4127
813-251-1210
FACSIMILE 813-253-2006

August 11, 2004

**VIA FACSIMILE AND UNITED STATES MAIL**

Bill Reeves, Esquire
1882 Capitol Circle NE, Suite 206
Tallahassee, Florida 32308

    RE:    *Miriam Ivory Williams v. Gadsden County Sheriff's Office;*
            Our File No. 5000-188

Dear Mr. Reeves:

In response to your request for an additional month of leave with pay for Ms. Williams, Mike Phillips at the Florida Department of Law Enforcement has advised me that he expects to complete the FDLE investigation within the next two weeks. Therefore, the Sheriff's Office will continue Ms. Williams' leave with pay until August 15, 2004, and will assess the status of this matter at that time. Payment for her August insurance premium has been deducted from her pay.

Please feel free to call me if you have any questions.

Sincerely,

Linda G. Bond

LGB/ajh

cc:    Captain Cecil Morris

29717_1

THE LAW OFFICE OF

H. RICHARD BISBEE, P.A.

*A Professional Association*

—

1882 Capital Circle, N.E., Suite 206
Tallahassee, Florida 32308

—

Telephone: (850)-386-5300
Telecopier: (850)-219-0053

—

E-Mail: hrblaw@electro-net.com

March 21, 2005

VIA FACSIMILE (850) 942-5524
Ms. Linda Bond
Allen, Norton and Blue
1669 Mahan Center Boulevard
Tallahassee, Florida 32308-5454

Dear Ms. Bond:

As you know, this law firm represents Ms. Miriam Ivo    Williams in
connection with claims regarding her employment with the C    dsden County
Sheriff's Office.

Due to the election of the new Sheriff and other uniqu    circumstances, we
are requesting a meeting with you and Sheriff Young to disc    s our client's case
and possible settlement of claims against the Gadsden Cou    ty Sheriff's Office
prior to filing a complaint or taking further action. If possibl    we would like to
schedule this meeting during the week of March 28, 2005.

During our conversation last Friday you indicated tha    ou wanted me to
provide you with a list of topics to be discussed during t    s meeting. I am
suggesting that it would be mutually advantageous to both    ur client and the
new Sheriff to consider the following issues:

1.    Now that the persons who were primarily r    sponsible for the
problems our client experienced as a former employee are n    longer employed
by the Gadsden County Sheriff's Office, should Ms. Willian    be rehired as a
Deputy Sheriff or in some other capacity?

2.    What, if any, compensation and other relief sh    ld Ms. Williams
receive as the result of the alleged improper conduct that wa    the basis for the
recent FDLE report and other allegations that have been recen    y been described
to you?

3.      If Ms. Williams is not rehired, what is the reason for this decision and what if any recommendations or other statements will be given to prospective employers that contact the Gadsden County Sheriff's Office?

4.      Any other issues you or the Sheriff want to discuss during this meeting.

I will be out of the Office until Friday afternoon, but will be checking messages.  Please call me to schedule a meeting or if you want further discuss this matter.

Sincerely,

Bill Reeves
"Of Counsel"

### THE LAW OFFICE OF
## H. RICHARD BISBEE, P.A.
*A Professional Association*

—

**1882 Capital Circle, N.E., Suite 206
Tallahassee, Florida 32308**

—

**Telephone: (850)-386-5300
Telecopier: (850)-219-0053**

—

**E-Mail: hrblaw@electro-net.com**

April 13, 2005

VIA FACSIMILE (850) 942-5524
Ms. Linda Bond
Allen, Norton and Blue
1669 Mahan Center Boulevard
Tallahassee, Florida 32308-5454

Dear Ms. Bond:

As you know, this law firm represents Ms. Miriam Ivory Williams in connection with claims regarding her employment with the Gadsden County Sheriff's Office.

This will confirm our conversation last week in which you refused the request set forth in my March 21, 2005 letter to you that you schedule a meeting with Sheriff Young to discuss a possible settlement in this matter, including what are patently false allegations that have been made to the Sheriff about our client and recent alleged improper conduct by a Gadsden County Sheriff's Office (GCSO) employee. This will also confirm that you nor the Sheriff is interested in my prior offer to make our client available to take a polygraph—or similar test capable of discerning accuracy of her answers--regarding what appear to be patently false allegations by Captain Barkley that she was paid by another candidate who ran for Sheriff to complain about the GCSO to the Florida Department of Law Enforcement.

Sincerely,

Bill Reeves
"Of Counsel"



## Dexter L. Jackson
### *"MVP" Scholarship Banquet*

**When:** Friday, April 11, 2003
**Where:** National Guard Armory
2049 Pat Thomas Parkway

VIP Reception: 5:30 p.m.
Banquet: 7:00 p.m.

SCHOLARSHIP DONATION $50.00