UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**MIRIAM WILLIAMS-IVORY,**

    **Plaintiff,**

v.　　　　　　　　　　　　　　　　　　**CASE NO. 4:06-CV-484-RH-WCS**

**MORRIS YOUNG, in his official
capacity as Sheriff of the GADSDEN
COUNTY SHERIFF'S OFFICE,**

    **Defendant.**
_____/

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

This memorandum of law is submitted in accordance with the local rules of this Court.

**I.　INTRODUCTION**

The Amended Complaint consists of one count. The Plaintiff alleges that she was subjected to gender discrimination in violation of Title VII. In particular, the Plaintiff alleges that she "suffered disparate treatment at the hands of the Defendant when compared to the treatment provided to her male law enforcement counterparts" as well as a hostile work environment. (Compl. ¶¶ 17, 20).

Absent from the complaint is a separate count alleging retaliation. Thus, the only issues before the Court are whether Plaintiff suffered gender discrimination as a result of disparate treatment and a sexually hostile work environment.

**II.　SUMMARY JUDGMENT STANDARD**

A motion for summary judgment should be granted when the pleadings, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is

43604_1

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). One of the primary purposes of summary judgment proceedings is to prevent the needless expense and effort of litigating frivolous and meritless claims. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980); *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498 (7th Cir. 1972).

An issue of fact is "material" if it might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, because a particular issue is one of fact does not necessarily imply that summary judgment is inappropriate. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In *Anderson*, the Court stated: "By its very terms, the standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." 477 U.S. at 247-248. Thus, where a sufficient legal basis exists for the entry of judgment in favor of a defendant, summary judgment may be appropriate.

In the companion case, the Court recognized that "[t]he moving party is entitled to a judgment as a matter of law" when the nonmoving party fail[s] to make a sufficient showing on an essential element of [the] case to which [the nonmoving party] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citations omitted); s*ee also Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987). The Court need not search the entire record and find a complete absence of a genuine issue of material fact before granting summary judgment. *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988).

Only those disputes over facts that might affect the outcome of a lawsuit under governing substantive law will preclude summary judgment. "Factual disputes that are irrelevant or that are

43604_1

2

unnecessary will not be counted." *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987), cert. denied 484 U.S. 851 (1987) (internal citations omitted). Moreover, "[t]he substantive area of law involved is relevant in determining which facts are material" for purposes of summary judgment. *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (internal citations omitted).

In reviewing the record, it is apparent that Plaintiff's claims are factually and legally insufficient to withstand the motion for summary judgment. Relying on affidavit and deposition testimony, and the documents relevant to the claims of the Plaintiff, the Defendant will establish entitlement to a resolution by judgment as a matter of law.

### III.   DISPARATE TREATMENT

In her complaint, the Plaintiff contends that her termination from the agency on August 31, 2004 was discriminatory because "male workers were not subjected to the same alleged infractions giving rise to Ms. Williams-Ivory's termination". (Compl. ¶¶16-18). Defendant is entitled to summary judgment because the Plaintiff cannot establish a prima facie case of gender discrimination.

"To establish a prima facie case of disparate treatment, [the Plaintiff] must show (1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated male employees more favorably; and (4) she was qualified to do the job." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). The Plaintiff cannot provide any evidence of similarly situated male employees who were treated more favorably.

The Plaintiff was on paid leave from April 12, 2004 until her termination on August 31, 2004. When her FMLA leave exhausted, Sheriff Woodham continued her on a paid status until it became apparent that she would not return to work in the foreseeable future. (Morris Aff. ¶¶

11-12, 15). Notably, Plaintiff does not dispute her inability to perform her duties as a deputy sheriff. In her complaint, the Plaintiff represents that as a result of her "extensive medical leave" her health problems prevented her from working. (Compl. ¶11). In addition, the Plaintiff states that only after "extensive counseling and other medical treatment, was she able to return to work as a law enforcement officer." (Compl. ¶14).

Although the Plaintiff alleges in her complaint that "infractions" gave rise to her termination, the Plaintiff was not terminated for misconduct. Rather, it is undisputed that her inability to perform her duties as a deputy sheriff led to her termination. The Plaintiff cannot establish a prima facie case, therefore, because there are no male comparators for the purposes of a gender discrimination claim that support her discrimination claim.

As apparent from the affidavit of Capt. Cecil Morris, there are no other male employees who are similarly situated with Plaintiff but have been treated more favorably. Defendant is unaware of any male employees who had been absent from work for such an extended period of time and were continued to be employed.

Even assuming that Plaintiff can establish a prima facie case, Defendant has articulated a legitimate nondiscriminatory reason for her termination. It is incumbent on the Plaintiff to raise factual issues of pretextual termination. *See Abel v. Dubberly*, 210 F.3d 1334, 1339 (11th Cir. 2000). Because there is no evidence to infer discriminatory motive, summary judgment should be granted.

Although not referenced in the complaint, the Plaintiff has also alleged that she was treated differently from male co-workers because she was not provided a Class A uniform and a jacket. (Pl.'s Dep. 81-83). However, in her deposition she concedes that she doesn't know when

or how other school resource officers obtained long-sleeved uniforms and jackets. (Pl.'s Dep. 83).

In fact, school resource officers were not provided Class A uniforms and jackets because of budget concerns. Sheriff Woodham had concluded that such Class A uniforms were not to be provided to school resource officers but were given to patrol deputies. (Sadler Aff. ¶2). Thus, any school resource officers who had been provided such attire obtained the jacket or uniform while serving in a different capacity. (Sadler Aff. ¶2). With respect to the issue of uniforms and jackets, therefore, the Plaintiff is unable to establish a prima facie case because she cannot show that she was treated differently from her male counterparts.

In addition, her prima facie case on this issue fails because she cannot establish an adverse job action by the Defendant. "[C]onduct that alters an employee's compensation, terms, conditions, or privileges of employment does constitute adverse action under Title VII." *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1118 (11th Cir. 2001) (citation omitted) (internal quotation marks omitted). Simply put, the lack of a Class A uniform or jacket does not correspond with compensation, terms, conditions or privileges of employment as recognized in cases construing Title VII discrimination actions. *See, e.g., Davis v. Town of Lake Park*, 245 F.3d 1232, 1242 (11th Cir. 2001). ([T]he protections of Title VII simply do not extend to 'everything that makes an employee unhappy.' (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997))).

IV.   **HOSTILE WORK ENVIRONMENT**

To prevail under Title VII, the Plaintiff must show that she was harassed because of her sex, that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment, and that there is some basis for holding the Defendant liable. *Walton v. Johnson &*

*Johnson Servs., Inc.,* 347 F.3d 1272, 1279-80 (11th Cir. 2003) (internal citations omitted); *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 582 (11th Cir. 2000).

Although the Defendant does not concede that the Plaintiff was subjected to a sexually hostile work environment, Defendant recognizes that for summary judgment purposes, the Court must consider evidence and evidentiary inferences in the light most favorable to the Plaintiff. *See Anderson,* 477 U.S. at 255. Therefore, the Defendant does not seek summary judgment on the issue of whether the alleged harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment.

Rather, Defendant contends that it is entitled to summary judgment based upon the affirmative defense set forth in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). This affirmative defense focuses initially on the responsibility of the employer to prevent or correct workplace harassment, and the corresponding responsibility of the employee to protect herself from harassment by utilizing the procedures set forth by the employer "to promptly report [the harassment]." *Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1292 (11th Cir. 2007).

Although the Plaintiff may contend that because she suffered tangible employment action the affirmative defense is not applicable, as previously argued, Plaintiff's termination was unrelated to any gender discrimination. Furthermore, in the factual allegations of her complaint, the Plaintiff alleges that her termination was retaliatory for complaining to the Florida Department of Law Enforcement that she had been sexually harassed by Barkley. (Compl. ¶12). The Plaintiff also testified that she was unaware of any monies or benefits to which she was entitled that Barkley prevented her from receiving. (Pl.'s Dep. 182). Defendant, therefore, is entitled to assert its affirmative defense by proving that it acted reasonably to prevent and correct

43604_1

harassment, and that the Plaintiff acted unreasonably by failing to follow Defendant's policies and report the harassment. Indeed, the evidence in this case reveals that the Plaintiff never reported the harassment to anyone in the Sheriff's Office and essentially ignored the agency's policy regarding sexual harassment.

Upon her employment, the Plaintiff was provided a copy of Defendant's General Order 13.0 "Harassment in the Workplace". The policy prohibited sexual harassment, including sexual comments of a provocative or suggestive nature, as well as unwelcome sexual conduct or advances. (Pl.'s Dep. 70-71, Ex. 1; Morris Aff. ¶9). Furthermore, as a result of her involvement in a previous sexual harassment investigation when employed at the Department of Highway Safety and Motor Vehicles, the Plaintiff should have known that procedures were in place at the Gadsden County Sheriff's Office to address any alleged harassment by Barkley. (See Pl.'s Dep. 19).

The Defendant has addressed complaints of sexual misconduct by members of the agency, including the highest ranking supervisor at the Gadsden County Jail in 1997. Following a complaint by an inmate, the Florida Department of Law Enforcement (FDLE) investigated sexual misconduct by Capt. Roosevelt Baker in 1996 through 1997. (Morris Aff. ¶4). As a consequence of the investigation, Baker resigned his position with the Sheriff's Office on November 30, 1997. Baker was subsequently prosecuted for deprivation of civil rights and was convicted of this offense. (Morris Aff. ¶4).

In May 2000, FDLE conducted an investigation against Sgt. Shelton Turner for sexual battery. The alleged victim contended that Turner forced her to have sex to avoid an arrest for uttering a forged check. The FDLE report cleared Turner of any wrongdoing due to the lack of credibility of the complainant. (Morris Aff. ¶5).

In addition, in June 2004 Sgt. Robert Wilder was investigated following a complaint of sexual battery. An internal investigation was conducted which ultimately determined that Wilder had committed no misconduct. (Morris Aff. ¶5). Under Sheriff Young's administration, two complaints of sexual harassment have been investigated. In one instance, a deputy was removed from patrol duties as a result of the complaint. (Morris Aff. ¶6).

Thus, the promulgation of Defendant's policy, as well as the enforcement of such policy, amply meets Defendant's burden of establishing that it exercised reasonable care to prevent and correct sexual harassment. *See Baldwin,* 480 F.3d at 1292; *Walton,* 347 F.3d at 1287, *Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1298-99 (11th Cir. 2000). The Plaintiff, however, unreasonably failed to follow the policy and utilize its complaint procedures.

In the present case, the Plaintiff never complained internally of any of the alleged harassment of which she now complains. Once Defendant was apprised of her complaint to FDLE, it acted reasonably by relying upon FDLE to investigate her allegations. An internal investigation would have been duplicative of the investigation conducted by FDLE, and FDLE would likely have investigated the matter in any event.[1]

The Plaintiff, however, unreasonably failed to take advantage of Defendant's policy. Throughout her deposition, Plaintiff gave varying explanations as to why she didn't report any of the harassment of which she now complains. Her responses ranged from "I don't know why I didn't do that" to varying representations that she needed her job. (Pl.'s Dep. 70-71, 86, 180).

Remarkably, the Plaintiff submitted a memorandum to Sheriff Woodham on June 24, 2003 complaining about an altercation with Barkley concerning her failure to seek child care for

---

[1] FDLE had previously investigated allegations of sexual misconduct by members of the GCSO. Furthermore, Barkley as well as Chief Deputy Ed Spooner were both candidates for Sheriff. Therefore, if the Plaintiff had complained against Barkley, the Sheriff, or Mjr. Sadler, FDLE likely would have been requested to investigate the complaints. (Affidavits of Spooner and Morris).

43604_1

a juvenile whom she took into custody for child abuse.  When asked why she never referenced her alleged harassment by Barkley, including the alleged rape in June of the previous year, the Plaintiff replied "[m]aybe because I care more about this child than I do myself."  (Pl.'s Dep. 138.

It is also significant that the Plaintiff believes that she has been victimized as a result of the harassment, particularly the alleged harassment from Barkley.   (Pl.'s Dep. 181-82). However, notwithstanding her familiarity with Whitney Sampson, the Victims Advocate, she never divulged any mention of harassment to Sampson.  (Pl.'s Dep. 181-92).  Plaintiff certainly had her opportunities to advise Sampson.   She encountered Sampson after one particular altercation with Barkley, and traveled with Sampson on yet another occasion to Jacksonville on an investigation but never once mentioned harassment by Barkley or any other member of the agency. (Sampson Aff. ¶¶4-5; Pl.'s Dep. 177-82).

The record, therefore, amply demonstrates that the Plaintiff unreasonably failed to take advantage of preventive or corrective opportunities provided by the employer.  *See Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765.  In *Baldwin,* the Court held that the plaintiff acted unreasonably by failing to complain until more than three months had elapsed from a sexual proposition.  480 F.3 at 1307.  In the present case, the Plaintiff <u>never</u> reported her concerns to the Defendant.

The Eleventh Circuit has held that "the problem of workplace discrimination . . . cannot be [corrected] without the cooperation of the victims."  *Walton*, 347 F.3d at 1290, quoting *Madray,* 208 F.3d 1302.  It is not enough for the Plaintiff to allege fear for her job and assume that silence was the most appropriate course of action.  As the Eleventh Circuit has recognized,

while filing a sexual harassment complaint maybe "uncomfortable, scary or both",[2] employees must "assist in the prevention of harassment by promptly reporting it to the employer, or lose the opportunity to successfully prosecute a Title VII claim based on the harassment".  *Walton*, 347 F.3d at 1290; *Baldwin,* 480 F.3d at 1307.  Summary judgment, therefore, should be granted to the Defendant based upon the *Faragher-Ellerth* affirmative defense.

Respectfully submitted on this 29th day of May, 2007.

/s/ R. W. Evans
**R. W. EVANS**
Florida Bar No. 0198862
**ALLEN, NORTON & BLUE, P.A.**
906 North Monroe Street
Tallahassee, Florida 32303
Tel: (850) 561-3503
Fax: (850) 561-0332
www.revans@anblaw.com

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 29th, 2007, I electronically filed this document by using the CM/ECF system, which will send a notice of electronic filing to H. Richard Bisbee, Esquire, H. Richard Bisbee, P.A., 1882 Capital Circle N.E. #206, Tallahassee, Florida 32308.

/s/ R. W. Evans
**R. W. EVANS**

---

[2]  *Walton*, 347 F.3d at 1290 (*quoting Reed v. MBNA Mktg.Sys.Inc.*, 333 F.3d 27, 35 (1st Cir. 2003).

43604_1