UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**MIRIAM WILLIAMS-IVORY,**

    **Plaintiff,**

v.                                                                          CASE NO. 4:06-CV-484-RH-WCS

**MORRIS YOUNG, in his official
capacity as Sheriff of the GADSDEN
COUNTY SHERIFF'S OFFICE,**

    **Defendant.**
_____/

**STATEMENT OF UNDISPUTED FACTS**

1. The Plaintiff was employed at the Gadsden County Sheriff's Office in June 2002 as a school resource officer. (Pl.'s Dep. 26-28).

2. At the time of her employment at the Gadsden County Sheriff's Office, W. A. Woodham was the Sheriff of Gadsden County. Woodham indicated that her supervisor would be Capt. Robert Barkley. (Pl.'s Dep. 26-27).

3. The Plaintiff was issued a standard "Class B" uniform. The long-sleeved "Class A" uniforms, and Gadsden County Sheriff's Office jackets, were not issued to school resource officers but were reserved for patrol deputies due to budget constraints. (Sadler Aff. ¶2).

4. Also upon employment, the Plaintiff was issued a policy manual which contained the Defendant's "Harassment in the Workplace" policy which prohibited sexual conduct including unwelcome sexual advances and sexual comments of a provocative or suggestive nature. (Pl.'s Dep. 70). The policy provided that any

employee who was sexually harassed could contact his or her supervisor, or the Sheriff or the Sheriff's designee. A supervisor who received a complaint was required to report to a supervisor and to take immediate action to limit any further contact with the alleged harasser. (Pl.'s Dep., Ex. 1). Barkley was supervised by Mjr. Ed Spooner who became the Chief Deputy under Woodham. Any complaints of sexual harassment by Barkley could have been directed by the Plaintiff to Mjr. Spooner or to Capt. Cecil Morris, who was the administrative captain of the Sheriff's Office. (Morris Aff. ¶10; Spooner Aff. ¶2).

5. The Plaintiff attended a Juvenile Justice Conference with Barkley in Orlando on June 24, 2002, shortly after she was hired. Although the Plaintiff claims that Barkley stayed in her hotel room on the night of June 24 and required her to have sex against her will, she never reported the incident to anyone at the Gadsden County Sheriff's Office, nor did she report the alleged rape to any law enforcement agencies. (Pl.'s Dep. 47-57, 64-67). According to the Plaintiff, "I just didn't." (Pl.'s Dep. 64:13).

6. Plaintiff commenced her duties as a school resource officer at the George W. Munroe Elementary School in August 2002 for the 2002-2003 school term. (Pl.'s Dep. 69). At the end of the school term, she was assigned to criminal investigations, patrol duties, and special assignments as directed by Capt. Barkley. (Pl.'s Dep. 94-96, Ex. 3).

7. The Plaintiff received a substantial pay raise in June 2003. (Pl.'s Dep., Ex. 9). However, upset with a confrontation with Barkley regarding her failure to obtain medical care for a juvenile who had been taken into custody, the Plaintiff

submitted a memorandum to Sheriff Woodham regarding her dispute with Barkley. (Pl.'s Dep. 133-38, Ex. 9). There was no reference in the memorandum to any problems with Barkley other than this confrontation. Plaintiff did not complain about any sexual harassment or inappropriate sexual conduct. (Pl.'s Dep. 138).

8. Following the summer of 2003, the Plaintiff was reassigned to the Stewart Street Elementary School for the 2003-2004 school term. She had infrequent contact with Barkley, who was assigned to headquarters. (Pl.'s Dep. 104-5).

9. The Plaintiff interacted occasionally with Whitney Sampson, the Gadsden County Sheriff's Office Victims Advocate. The Plaintiff never confided in Sampson that she was being sexually harassed by Barkley. (Pl.'s Dep. 177-82; Sampson Aff. ¶5).

10. In April 2004 the Plaintiff retained the Police Complaint Center in Washington, D. C. to investigate her allegations of harassment by Barkley. The Plaintiff informed the Executive Director, Diop Kamau, that she had been sexually harassed by Barkley, who agreed to provide the Plaintiff with audio and video recording equipment and to conduct a surveillance of Barkley. (Pl.'s Dep. 151-53).

11. Throughout the school year, due to her investigative experience, the Plaintiff occasionally assisted in criminal investigations involving juveniles. In April 2004 the Plaintiff requested extended sick leave due to her stress from the job which she attributed to dividing her duties between school resource officer functions and investigative duties. (Pl.'s Dep. 184-7). She was placed on leave under the

43603_1

3

Family Medical Leave Act (FMLA) which continued through June 2004. (Morris Aff. ¶11).

12. While on FMLA leave, the Plaintiff contacted the Florida Department of Law Enforcement on June 3, 2004 and complained that she had been sexually harassed by Barkley. (Philips Aff. ¶1). Significantly, she omitted any mention of rape or unwelcome physical contact by Barkley. (Pl.'s Dep. 65-66, 159-60). She provided audio and video recordings to FDLE for their review, which initiated a criminal investigation against Barkley. (Pl.'s Dep. 158-61; Phillips Aff. ¶3). FDLE agents advised Sheriff Woodham of the ongoing investigation by FDLE against Barkley. (Phillips Aff. ¶2).

13. The Gadsden County Sheriff's Office has previously utilized FDLE for other investigations, particularly involving high level members of the agency. For example, in 1997 and 1998, FDLE investigated Roosevelt Baker, the commander of the jail which was operated by Gadsden County Sheriff's Office, for sexual intimacy with the inmate. Baker ultimately resigned his position as a result of the investigation and was criminally prosecuted for his improper sexual contact with an inmate. (Morris Aff. ¶4). Due to the ongoing investigation by FDLE against Barkley, therefore, no internal investigation was initiated by the Defendant. (Morris Aff. ¶13).

14. Upon the expiration of her FMLA leave in July 2004, the Plaintiff requested that she remain on paid leave, notwithstanding her lack of accrued leave. Sheriff Woodham approved the request and she was permitted to remain on leave through August 2004. (Morris Aff. ¶11).

15. On July 19, 2004, Diop Kamau, Executive Director of The Police Complaint Center, corresponded with Sheriff Woodham regarding the results of the investigation by The Police Complaint Center against Barkley. Kamau's memorandum concluded that Barkley had not harassed the Plaintiff, but that the Plaintiff was attempting to entrap and extort a settlement from Barkley, who was a candidate for sheriff. As a result of this memorandum, Sheriff Woodham continued to rely upon the ongoing investigation by FDLE and to await its outcome prior to taking action against Barkley. (Morris Aff. ¶14).

16. The Plaintiff remained on paid administrative leave in July and August 2004, while the FDLE investigation was ongoing. However, on August 30, 2004, it was apparent that the Plaintiff was unable to return to work. Therefore, Sheriff Woodham terminated her employment due to her inability to perform her job functions. (Morris Aff. ¶15).

17. Woodham retired as Sheriff of Gadsden County in November 2004.[1] Morris Young was elected Sheriff and assumed office on November 17, 2004. FDLE completed its investigation, and Young was briefed of its findings. According to the investigative report completed by FDLE, there was no evidence that Barkley pressured or threatened Williams-Ivory to do anything against her will. (Morris Aff. ¶3; Young Aff. Aff. ¶1; Phillips Aff. ¶3).

18. Sheriff Young was also aware of the memorandum from Diop Kamau dated July 19, 2004 regarding the investigation conducted by the Police Complaint Center. As a result of the FDLE investigative report, and the findings of the Police Complaint Center, Young concluded that the Plaintiff's allegations of sexual

    harassment against Barkley were unfounded. No disciplinary action was taken against Barkley, therefore, regarding Plaintiff's complaint of sexual harassment. (Young Aff. ¶3).

19. The Plaintiff reapplied for employment with the Gadsden County Sheriff's Office in March 2005. Sheriff Young declined to reemploy the Plaintiff as a result of a previous incident with the Plaintiff in which she had made unwelcome sexual advances towards him and had illegally recorded their conversation. Accordingly, Sheriff Young declined to hire her. (Young Aff. ¶¶5-6).

Respectfully submitted on this 29th day of May, 2007.

        /s/ R. W. Evans
        **R. W. EVANS**
        Florida Bar No. 0198862
        **ALLEN, NORTON & BLUE, P.A.**
        906 North Monroe Street
        Tallahassee, Florida 32303
        Tel: (850) 561-3503
        Fax: (850) 561-0332
        www.revans@anblaw.com

---

[1] W. A. Woodham died on April 14, 2005.

43603_1

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on May 29th, 2007, I electronically filed this document by using the CM/ECF system, which will send a notice of electronic filing to H. Richard Bisbee, Esquire, H. Richard Bisbee, P.A., 1882 Capital Circle N.E. #206, Tallahassee, Florida 32308.

/s/ R. W. Evans
**R. W. EVANS**